UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CINCINNATI INSURANCE COMPANY,

    Plaintiff,

        v.

O'LEARY PAINT COMPANY, INC.,

    Defendant.

_____

Case No. 1:09-cv-690

HONORABLE PAUL L. MALONEY

## Opinion and Order

**Granting the Defendant's Motion for Transfer of Venue under 28 U.S.C. § 1404(a);
Denying without Prejudice as Moot the Defendant's Alternative Motion to Dismiss or Stay**

This is an action under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* For the

reasons that follow, the court will grant defendant's motion to transfer the case to the United States

District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).

Plaintiff Cincinnati Insurance Company ("Cincy"), an Ohio corporation with its principal

place of business in Ohio, issued primary and umbrella commercial general liability ("CGL")

insurance policies to defendant O'Leary Paint Company, Inc. ("O'Leary"), a Michigan corporation

with its principal place of business in Michigan. *See* Complaint filed July 27, 2009 ("Comp") ¶¶

2, 5-6, and 12-14; Comp Exs C-I (primary policies covering policy periods from January 1, 1996

through November 27, 2010); Comp Exs J-O (umbrella policies covering policy periods from

January 1, 1997 through November 27, 2010). Diversity jurisdiction pursuant to 28 U.S.C. §§ 1332

is undisputed.  *See* Comp ¶ 7.

      This action arises out of a letter which the Indiana Department of Environmental Management ("IDEM") sent to defendant O'Leary alleging the unauthorized release of petroleum and/or other hazardous substances from an O'Leary facility located in Indiana.  *See* Comp ¶¶ 2 and 10-11.  The IDEM's April 27, 2009 letter to O'Leary read as follows, in its entirety:

        Re:    Site Investigation Request
                  O'Leary Paint
                  Indianapolis, Marion County
                  State Cleanup Site # 2009-04-169

Dear Mr. O'Leary:

A release of petroleum and/or hazardous materials [at] 2409 E Washington St., Indianapolis, (Site) was reported to the Indiana Department of Environmental Management (IDEM) by Eric Lewis of EnviroForensics on April 24, 2009.  In accordance with Indiana Code (IC) 13-24-1-6 and/or IC 13-25-4, as the current or past owner and/or operator of the property, you are a potentially responsible party and must assemble information about the size and nature of the release.  In addition, a responsible party may be ordered by the State to conduct removal or remediation actions (IC 13-24-1-1 and 13-25-4-9).

Pursuant to these statutes, in the interest of protection of public health and the environment, a Site Investigation must be conducted to determine the nature and extent of soil and ground water contamination at the above-referenced site. Guidance on how to characterize the nature and extent of the contamination can be found in IDEM's *Risk Integrated System of Closure (RISC) Technical Resource Guidance Document*, February 2001.  The RISC Guidance Documents are available online at www.in.gov/iden/programs/land/risc/index.html.  IDEM requests that the Site Investigation Report follow the Investigation Report format as provided in Appendix 1 of the IDEM's RISC *User's Guide*.

Additionally, the purpose of this letter is to inform you that the above-reference release is listed as a lower[-]priority site in the IDEM State Cleanup Program.  The priority listing for the Site is based upon information known to IDEM at the time the Site entered the State Cleanup Program.  Because other sites have releases that pose a greater risk to human health or the environment, department resources are only available to address the highest[-]priority releases.  Therefore, IDEM will not be providing direct project oversight of your site investigation and remediation activities at this time.

However, you are still responsible and required to conduct an investigation and complete the remediation pursuant to IC 13-25-4 and/or IC 13-24-1-6.

Please submit an electronic copy (i.e. Portable Document Format (.pdf) on compact disc) of all characterization and remediation documents to IDEM at the following address: * * *

Refusal to conduct the Site Investigation or take appropriate remedial actions may subject you to civil penalties, pursuant to IC 13-30-4-1.

As an alternative to an investigation and remediation under the direction of the State Cleanup Program you may apply to the IDEM Voluntary Remediation Program (VRP). If you are not accepted into the program or are deleted from the program due to lack of progress, you will be returned to the State Cleanup Program for regulatory action.

If you have any questions or comments concerning this matter, please contact . . . .

Comp Exhibit ("Ex") B or Defendant's Memorandum of Law in Support of Motion to Dismiss, Stay

or Transfer Case filed October 15, 2009 ("MTD") Ex 1 (April 27, 2009 letter from Indiana State

Cleanup Section, Office of Land Quality, Chief Harry Atkinson) ("IDEM Letter") at 1-2. On May

27, 2009, O'Leary sent Cincy a Notice of Suit and Request for Defense, *see* Comp ¶ 9, which reads

as follows, in its entirety:

Your policyholder, O'Leary Paint Company, Inc., is providing notice of a suit alleging property damage relating to its facility at 2409 E. Washington Street, Indianapolis, Indiana (the "Site"), under the reference insurance policies, the prior policies for which the referenced policies were renewals, and any other policies issued to O'Leary by Cincinnati or its affiliates.

This notice is to inform you that the Indiana Department of Environmental Management ("IDEM") has asserted a demand against O'Leary, alleging property damage in the form of soil and potential groundwater contamination at, under, and potentially emanating from, the Site. O'Leary has received a demand letter from IDEM advising it concerning a release of hazardous substances at the site, and requiring investigation concerning the nature and extent of the release. A copy of the letter from IDEM is enclosed with this notice of suit.

Accordingly, O'Leary requests that Cincinnati immediately defend and, if necessary, indemnify it under the terms and conditions of all applicable policies of insurance,

known or unknown, issued by St. Paul/Travelers [sic], its affiliates or subsidiaries.

We enclosed copies of the above-referenced policies.  We also note that boh of these policies state on their face that they are renewals of policies that Cincinnati issued to O'Leary for previous policy periods.

O'Leary is entitled, under the reference policies, including the prior policies, to full and complete coverage, including a defense obligation, concerning this matter, and disagrees with any interpretation of this or other policies issued to it that does or could limit, diminish or compromise in any respect any of O'Leary's rights or entitlements to such coverage, including the defense obligation.

**Time is of the essence because O'Leary is required by IDEM to conduct site investigation activities.**  To protect its interests, O'Leary has engaged Environmental Forensic Investigations, Inc. to conduct the investigation (and, if needed, remediation) activities demanded by IDEM.  O'Leary also has engaged Barnes and Thornburgh LLP attorney David Gillay to provide a legal defense to the IDEM demands.

O'Leary also has engaged me to assist in communicating with the carriers regarding coverage and to assist in any coverage issues that might arise.  Please direct future communications regarding coverage for this site to me at * * *

Please also review your records, including any underwriting, claims and reinsurance records, to confirm all coverages you provided to O'Leary for any policy period.  We also ask that you provided certified copies of the above-referenced policies, the prior policies for which the referenced policies were renewals, as well as certified copies of any other policies issued to O'Leary by Cincinnati or an affiliate or subsidiary, and any partial or secondary policy information you may have.  Should your files contain information concerning other insurance companies' policies for this insured, please include it in your response.

* * *

O'Leary requests that Cincinnati immediately acknowledge its defense obligations with respect to this suit.  Thank you for your professionalism and cooperation in ths claims process.

Comp Ex A or MTD Ex 2 (Letter of John P. Fisher, Esq., to Cincinnati Insurance Company Claims

Analyst dated May 27, 2009) at 1-2 (boldface in original).

O'Leary contends that the CGL policies obligate Cincy to provide or fund a legal defense,

as well as indemnification, in relation to proceedings which the Indiana agency institutes against

O'Leary, while Cincy denies the existence of coverage or a duty to defend. *See* Comp ¶¶ 3-4. Cincy

alleges that the policies provide that it will have the right and duty to defend any "suit" seeking

damages due to "property damage", *see* Comp ¶ 15, and that the policies define "suit", in pertinent

part, as "a civil proceeding in which money damages because of . . . 'property damage' . . . to which

insurance applies are alleged", *see* Comp ¶ 16. Cincy makes two arguments against imposition of

a duty to defend or indemnify: first, the IDEM letter does not constitute a "suit" as the policies

define the term, and second, even if it is a suit, the duty to defend or indemnify is specifically

foreclosed by the policies' unambiguous pollution-exclusion clauses. *See* Comp ¶¶ 17-19.

About a week later, on June 5, 2009, Cincy responded with a letter stating as follows:

This letter will acknowledge receipt of the claim you forwarded to us regarding our insured, O'Leary Paint Company, Inc.

The Cincinnati Insurance Company is now in the process of reviewing all policies that Cincinnati wrote for O'Leary Paint Company, Inc. Any policies written by Cincinnati will be subject to certain conditions and exclusions that may impact coverage. Until we have an opportunity to review those policies, we are not in a position to respond further to your request for coverage. Consequently, we will proceed subject to a full and complete reservation of rights. Any action taken on behalf of Cincinnati should not be construed as a waiver of any of our rights under the policies written. Until we can complete our coverage determination, O'Leary Paint Company, Inc[.] should continue to protect its own interest in the defense of this matter.

Additionally, as it appears this claim could involved many years of exposure, all of the prior insurance carriers for O'Leary Paint Company, Inc[.] should be put on official notice of this claim.

In your letter, you demand that Cincinnati Insurance Company defend and indemnify O'Leary under policies issued by St. Paul/Travelers. While this may be a typographical error, please note that Cincinnati Insurance Company has no affiliation with St. Paul/Travelers, and we have no legal duties to respond under any policies issued by that company.

In the meantime, please forward any information you have on this claim, including but not limited to:

- Date of claimed occurrence
- History of ownership of the site
- Any demands and correspondence from IDEM or USEPA regarding this claim
- All environmental reports completed to date
- Lists of substances allegedly found on the site
- Any additional information you possess which may be helpful in the review of this claim

Thank you for assisting us in this regard, and I will contact you as soon as possible with the completed policy review.

MTD Ex 3 (Oct. 15, 2009 letter from Cincy's Brooke Schubert to O'Leary's John Fischer, Esq.) at

1-2. Over a month later, on July 15, 2009, O'Leary replied to Cincy as follows:

This acknowledges and responds to your June 5, 2009 letter regarding the referenced matter. Your letter requests certain information from O'Leary Paint to assist in your evaluation of this claim. Your requests are set forth in italics below, and our response to each of your requests follows.

1. *Dates of claimed occurrence.* The tank that is currently believed to be the source of the constituents identified at the site was removed before O'Leary Paint purchased the property in August, 1998. The constituents are believed to have caused continuous, progressive property damage from at least the date of the removal of the tank to the present, including during the Cincinnati policy periods.

2. *History of ownership of the site.* The owner of the site immediately prior to O'Leary Paint was Finex, Inc. Any additional information in O'Leary Paint's possession about the prior ownership of the site is contained in the environmental reports enclosed with this letter.

3. *Any demands and correspondence from IDEM or USEPA regarding this claim.* The only demand or correspondence received to date was the April 27, 2009 letter from IDEM that was enclosed with our May 27, 2009 letter to you. There has been no correspondence with USEPA.

4. *All environmental reports completed to date.* The only historical environmental report completed for this site that O'Leary Paint has been able to locate is a partial copy of an August 17, 1998 Phase I report prepared by American Environmental Corporation. That document is enclosed with that letter. Additionally, we enclose a copy of a Phase II report recently completed on behalf of O'Leary Paint by EnviroForensics dated July 6, 2009. [omitting warning that phase II report is privileged and confidential

document and had not yet been disclosed to IDEM]

5. *Lists of substances allegedly found on the site.* This information can be found in the enclosed July 6, 2009 Phase II report.

6. *Any additional information you possess which may be helpful in the review of this claim.* If you believe any additional information is necessary for Cincinnati to confirm its coverage obligations, including its defense obligation, please let us know and we will work to comply with your request.

We believe that Cincinnati now has sufficient information for it to confirm its defense obligations to O'Leary Paint, and we look forward to your confirmation of Cincinnati's obligations. O'Leary Paint continues to reserve all of its rights with respect to this matter. We look forward to working with you.

MTD Ex 4 (July 15, 2009 letter of O'Leary's John Fisher, Esq. to Cincy's Brooke Schubert).

O'Leary also contemporaneously sent a copy of the letter to Cincy by e-mail. *See* MTD Ex 5

(electronic mail of O'Leary's John Fisher, Esq. to Cincy's Brooke Schubert at 12:32 p.m. on Wed.

July 15, 2009). The next day, on July 16, 2009, Cincy replied to O'Leary by e-mail simply as

follows: "Thanks for the letter. I will look forward to receiving all of the attachments in the mail.

Once we've reviewed everything we'll get out our position letter in short order." *See* MTD Ex 5

(electronic mail of Cincy's Brooke Schubert to O'Leary's John Fisher, Esq. at 11:36 a.m. on Thu.

July 16, 2009).

Eleven days later, on July 27, 2009, Cincy brought this action seeking a declaration that it

has no duty to defend or indemnify O'Leary with regard to the IDEM letter. *See* Comp ¶¶ 20-24

(Count I, Declaration of No Coverage). This court's docket sheet indicates that O'Leary was served

with the complaint and summons on July 28, 2009. *See* Doc. No. 3. On August 14, 2009, Cincy's

counsel sent the following e-mail to O'Leary's counsel:

I am writing to advise you that we (myself and Ken Newa) have been retained to represent Cincinnati Insurance company in the lawsuit we recently filed against O'Leary Paint Company. I was surprised to hear from Brooke Schubert that you

were unaware of the filing. To assist in catching you up to speed and per your request, I have attached a copy of the Summons and Complaint that I filed on July 27, 2009. I will send you a copy of the Exhibits to our Complaint shortly in a separate email.

I have also attached for your file the Proof of Service and a copy of Cincinnati's Corporate Disclosure. As you will see, O'Leary's answer is currently due on August 18th (correct me if I am wrong). Under the circumstances, I am generally agreeable to an extension of time if needed.

I believe that we previously worked on the . . . case together, although it was only for a short period of time, as Travelers settled . . . early on. I look forward to working with you again.

Please let me know if you need anything else.

MTD Ex 6 (electronic mail of Cincy's Lauren B. McMillen, Esq., to O'Leary's John Fisher, Esq., at 11:20 a.m. on Friday, August 14, 2009). With a jointly stipulated extension of time, O'Leary filed an answer and corporate disclosure statement on September 17, 2009, *see* Doc. Nos. 5-9. On October 8, 2009, Cincy filed an answer to O'Leary's counterclaim and affirmative defenses. *See* Doc. No. 11.

A day after O'Leary filed its answer here, it brought suit against Cincy in federal district court in Indiana. *See* MTD Ex 7 - Complaint in *O'Leary Paint Company, Inc. v. Cincinnati Insurance Company*, Case No. 1:2009-cv-1249-RLY-TAB (S.D. Ind.), filed October 9, 2009 ("the Indiana complaint"). In the Indiana lawsuit, O'Leary seeks damages for Cincy's alleged breach of its contractual duties to defend and, if necessary, indemnify under these same policies, with regard to the same Indiana DEM process and the same Indiana facility.

### LEGAL STANDARD and ANALYSIS

As the movant, it is O'Leary's burden to establish the propriety of a change in forum. *See*

*Sullivan v. Tribley*, 602 F. Supp.2d 795, 799 (E.D. Mich. 2009) (David Lawson, J.) (citing *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978), *overruled o.g. by Pirone v. McMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990)).  Section 1404(a) does not contemplate "transfer to a forum that is equally convenient or inconvenient" overall, *Shanehchian v. Macy's, Inc.*, 251 F.R.D. 287, 292 (S.D. Ohio 2008), and "transfer is not proper if the result is simply to shift the inconvenience from one party to another."  *Evans Tempcon, Inc. v. Index Indus., Inc.*, 778 F. Supp. 371, 377 (W.D. Mich. 1990) (Richard Alan Enslen, J.) (citing *Kimball v. Schwartz*, 580 F. Supp. 582 (W.D. Pa. 1984) and *Central States Pension Fund v. Brown*, 587 F. Supp. 1067 (N.D. Ill. 1984)).

O'Leary carries this burden, making a strong case for transfer under title 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it could have been brought."[1]  Our Court of Appeals emphasizes that "[a]s the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' makes a transfer appropriate."  *Reese v. CNH America,*

---

[1]

The fact that Cincy brought suit in this court before O'Leary brought suit in Indiana does not bring the "first-to-file rule" into play as part of the transfer-of-venue analysis.  Even aside from the fact that this action commenced a mere six weeks before the Indiana action, the first-to-file rule and transfer of venue are "separate questions, the analysis of which are conducted separately."  *Zimmer Enters., Inc. v. Atlandia Imports, Inc.*, 478 F. Supp.2d 983, 989 (S.D. Ohio 2007) (Thomas Rose, J.).

"The first-filed rule does not supersede the inquiry into the balance of convenience under § 1404(a) and a transfer justified under § 1404(a) [may be] proper even if the action to be transferred was filed before a related action was filed in the transferee district.'" *Zimmer Enterprises*, 478 F. Supp.2d at 989 (quoting *Societe Generale v. Florida Health Sciences Ctr., Inc.*, 2003 WL 22852656, *8 (S.D.N.Y. Dec. 3, 2003)).  *See, e.g., Nader v. McAuliffe*, 549 F. Supp.2d 760, 763 (E.D. Va. 2008) (although action was filed before the "essentially identical" action pending in the transferee court, the balance of the 1404(a) factors warranted transfer "in order to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts").

*LLC*, 574 F.3d 315, 320 (6th Cir.) (Ryan, Gibbons, <u>Sutton</u>), *reh'g denied*, 583 F.3d 955 (6th Cir. 2009); *accord North Shore Gas Co. v. Salomon, Inc.,*, 152 F.3d 642, 648 n.3 (7th Cir. 1998) ("District courts have broad discretion with respect to motions to transfer under § 1404(a), and will not be reversed absent a clear abuse of that discretion.") (citing *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1985)).

In ruling on a motion to transfer pursuant to section 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, "such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)).

As a threshold matter, the parties agree that Cincy's declaratory-judgment action "could have been brought" in the Southern District in Indiana in the first instance, so that threshold requirement for transfer of venue is satisfied. *Contrast Continental First Federal, Inc. v. Watson Quality Ford, Inc.*, 2009 WL 2032401, *8-10 (M.D. Tenn. July 9, 2009) (John Nixon, Sr. J.) (because proposed transferee district could not exercise personal jurisdiction over one of the three corporate defendants under Mississippi long-arm statute, that district was not one where the action "could have been brought", and motion for transfer of venue was denied).

<u>Little or No Weight Accorded to Plaintiff's Choice of Forum under the Circumstances.</u>

**"Although plaintiff's choice of forum is ordinarily entitled to some deference, it should carry less weight in a declaratory judgment action.** 'A plaintiff brings such an action because it has perceived a threat of suit. Therefore, its posture before the court is more akin to a defendant

than an ordinary plaintiff seeking relief.'" *Zimmer Enters., Inc. v. Atlandia Imports, Inc.*, 478 F.

Supp.2d 983, 989 (S.D. Ohio 2007) (Thomas Rose, J.) (quoting *Societe Generale v. Florida Health*

*Sciences Ctr., Inc.*, 2003 WL 22852656, *7 (S.D.N.Y. Dec. 3, 2003) (Cedarbaum, J.)); *see also*

*Emerging Vision, Inc. v. For Eyes Optical Co.*, 2009 WL 702243, *4 (S.D.N.Y. Mar. 16, 2009)

(Deborah Batts, J.) (citations omitted). Relying on this same observation, the Seventh Circuit holds

that a district court may choose to give little *or no* weight to a declaratory-judgment plaintiff's

choice of forum in the section 1404(a) analysis. In a declaratory-judgment action, the Seventh

Circuit employed reasoning which applies equally well in the instant case:

> When a plaintiff chooses her own forum, it is normally reasonable to assume that the choice is convenient. The plaintiff is, after all, master of the complaint . . . , and this includes the choice of where to bring suit. In normal instances, therefore, a certain deference is due to the plaintiff's choice of forum with respect to convenience.

> In the case of a declaratory judgment action, however, that principle has less force: but for Hyatt's preemptive filing in Illinois, this would be in all respects Coco's suit, and he would have been entitled to file whenever he wanted, wherever he wanted. He is the "natural plaintiff" – the one who wishes to present a grievance for resolution by a court. *Tempco Elec. Heater Corp. v. Omega Eng., Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987).

> We have expressed wariness at the prospect of "a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural plaintiff.'" *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993). It is quite clear from Coco's arguments, and from his having filed suit [elsewhere], that Illinois is not his forum of preference.

*Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002) (paragraph breaks added) (other internal

citations omitted). *Accord Breckenridge Pharmaceutical, Inc. v. K.V. Pharmaceutical Co.*, 2009

WL 1404698, *5 (S.D. Fla. May 19, 2009) ("Where two courts have concurrent jurisdiction over

substantially similar actions, less deference may be given to a plaintiff who has filed a declaratory

judgment [action] in anticipation of litigation.") (citing *Ven-Fuel, Inc. v. Dep't of Treasury*, 673 F.2d

1194, 1195 (11th Cir. 1982) (a district court may decline to consider a declaratory-judgment action on its merits when a proceeding pending in another court will fully resolve the controversy between the parties)).[2]

**Even if Cincy were not a declaratory judgment plaintiff here, its choice of a Michigan forum would be entitled to less weight because Michigan is not its home (it is an Ohio corporation with principal place of business in Ohio).** As the Supreme Court has stated,

> When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* analysis is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

*Piper*, 454 U.S. at 255-56. District courts throughout our Circuit consistently apply this rule. *See, e.g., Tri-Con, Inc. v. Volvo Trucks North America*, 2006 WL 1752411, *4 (**W.D. Mich.** June 23, 2006) (Robert Holmes Bell, C.J.) ("Plaintiffs hav[ing] no personal interest in having the case tried in this particular jurisdiction, the Court concludes that they lose any presumption in favor of their choice of forum."); *Delaney v. UPS, Inc.*, 2009 WL 396172 (**E.D. Mich.** Feb. 17, 2009) (granting employer's § 1404(a) motion where, *inter alia*, employee did not reside in chosen district, the events giving rise to her FMLA claim did not take place there, and employment file and documents relating to termination were not located there); *Cescato v. Anthem, Inc.*, 2005 WL 3487974, *2 (**N.D. Ohio** Dec. 21, 2005) (Polster, J.) ("[W]hen the chosen forum is not the plaintiff's residence, the choice is given less consideration.") (citing *Travelers Cas. & Surety Co. v. Phila. Reins. Corp.*, 2001 WL

---

[2]

*Cf. Mathis v. Geo Group, Inc.*, 535 F. Supp.2d 83, 87 (D.D.C. 2008) (granting defendants' motions for transfer of venue, stating, "[U]sually a strong presumption exists in favor of plaintiffs' choice of forum. But this preference is not insurmountable, and here, it is entitled to less weight given the posture of many of the plaintiffs as out-of-state[rs] seeking injunctive and declaratory relief.") (citations omitted).

631328, *4 (N.D. Ohio May 10, 2001) (Carr, J.) and *Central States S.E. and S.W. Areas Health & Welfare Fund v. Guar. Trust Life Ins. Co.*, 8 F. Supp.2d 1008, 1011 (N.D. Ohio 1998) (Katz, J.)).

<u>Private-Interest Factors Are Neutral or Weigh in Favor of Transfer</u>

**Against the insubstantial weight accorded to a declaratory-judgment plaintiff's choice of forum – and a *foreign* declaratory-judgment plaintiff, at that – are arrayed factors which are all either neutral or weighted in favor of "natural plaintiff" O'Leary's chosen forum, Indiana.** In addition to the convenience to the plaintiff, which is reflected in the weight given to its choice of forum, a non-exhaustive list of the other "private interest" factors typically considered by Sixth Circuit courts includes the following:

> (1) the convenience to the [other] parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

*Steelcase, Inc. v. Smart Techs., Inc.*, 336 F. Supp.2d 714, 719-20 (W.D. Mich. 2004) (Quist, J.) (citing *Campbell v. Hilton Hotels Corp.*, 611 F. Supp. 155, 157 (E.D. Mich. 1985) (cite omitted)).

"[T][he convenience and availability of counsel are given little weight in a change of venue motion." *Tri-Con, Inc. v. Volvo Trucks North America*, 2006 WL 1752411, *4 (W.D. Mich. June 23, 2006) (Bell, C.J.) (citing *Simmons Ford, Inc. v. Consumers Union of the US, Inc.*, 490 F. Supp. 106, 107 (W.D. Mich. 1980) (Gibson, C.J.)); *see also Hite v. Norwegian Caribbean Lines*, 551 F. Supp. 390, 395 (**E.D. Mich.** 1982) ("[T]he convenience of counsel is not a relevant factor under 28 U.S.C. § 1404(a).") (district-court cites omitted). Our Court of Appeals has not yet enunciated this

-13-

rule. But the rule is sensible and universally observed by circuit and district courts nationwide,[3] and

this court follows it.

**The first *Steelcase* private-interest factor, convenience to the parties, is neutral or**

---

[3]

*Accord* **1st Circuit,** *Edens Techs., LLC v. Kile, Goekjian, Reed & McManus, PLLC*, – F. Supp.2d –, 2009 WL 3065211, \*5 n.7 (**D. Me.** Sept. 18, 2009); *US v. City of Woonsocket*, 480 F. Supp.2d 434, 437 (**D. Mass.** 2007) (quoting *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004));

**2d Circuit,** *Scheinbart v. Certain-Teed Prods. Corp.*, 367 F. Supp. 707, 710 n.15 (**S.D.N.Y.** 1973);

**3d Circuit,** *Burstein v. Applied Extrusion Techs., Inc.*, 829 F. Supp. 106, 112 (D. Del. 1992) (citing *Solomon v. Continental Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (**3d Cir.** 1973));

**4th Circuit,** *Original Creatine Patent Co. v. Met-Rx USA, Inc.*, 387 F. Supp.2d 564, 571 (**E.D. Va.** 2005); *Mims v. Procter & Gamble Dist. Co.*, 257 F. Supp. 648, 657 (**D.S.C.** 1966);

**5th Circuit**, *Empty Barge Lines II, Inc. v. Dredge Leonard Fisher*, 441 F. Supp.2d 786 (**E.D. Tex.** 2006) (citing *In re Volkswagen AG*, 371 F.3d 201, 206 (**5th Cir.** 2004) ("The word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a).")));

**8th Circuit**, *Moran v. Vermeet Mfg. Co.*, 498 F. Supp. 1274, 1281 (**W.D. Mo.** 1980) and *Greyhound Computer Corp. v. IBM Corp.*, 342 F. Supp. 1143, 1146 (**D. Minn.** 1972);

**9th Circuit,** *Peralta v. Countrywide Home Loans*, 2009 WL 3837235, \*8 (**N.D. Cal.** Nov. 16, 2009); *Szegedy v. Keystone Food Prods., Inc.*, 2009 WL 2767683, \*6 n.4 (**C.D. Cal.** Aug. 26, 2009); *Leyvas v. Bezy*, 2008 WL 2026276, \*5 (**D. Ariz.** May 9, 2008);

**10th Circuit,** *Island View Residential Treatment Ctr. Kaiser Permanente*, 2009 WL 2614682, \*3 (**D. Utah** Aug. 21, 2009); *Pope v. Quivira Council, Boy Scouts of Am.*, 2007 WL 3003002, \*2 (**D. Kan.** Oct. 12, 2007); *Bell v. Union Pacific R.R. Co.*, 2007 WL 1851423, \*3 (**D. Colo.** June 27, 2007);

**11th Circuit,** *US v. Kaplan Univ.*, 2009 WL 763747, \*4 (**M.D. Fla.** Mar. 23, 2009); *Tommy Bahama Group, Inc. v. The Walking Co.*, 2007 WL 3156254, \*3 (**N.D. Ga.** Oct. 19, 2007); *Bartronics, Inc. v. Power-One, Inc.*, 510 F. Supp.2d 634, 638 (**S.D. Ala.** 2007);

**D.C. Circuit,** *SEC v. Roberts*, 2007 WL 2007504, \*3 (**D.D.C.** July 10, 2007) ("[Plaintiff] . . . thus raises concerns that relate far more to the convenience of SEC attorneys than to the SEC itself. Therefore, the Court finds this factor of little weight in the analysis.") (internal citation omitted).

**weighs slightly in favor of transfer.** Despite Cincy's apparently tactical decision to bring its declaratory-judgment suit here, it cannot be said that Michigan is a more convenient forum for it than the Southern District of Indiana. Whether this case is heard in Michigan or in Indiana, the Ohio-based Cincy officials and employees will be required to travel outside Ohio for deposition and/or trial testimony. And they will be put to less inconvenience and expense by traveling to the federal courthouse in the Southern District of Indiana, which is much closer to Cincy's principal place of business in southern Ohio than is our courthouse in Kalamazoo, Michigan. *Cf. Cescato v. Anthem, Inc.*, 2005 WL 3487974, *2 (**N.D. Ohio** Dec. 21, 2005) (Polster, J.) (transferring case to Southern District of Indiana and noting, "the federal courthouse in Indianapolis is substantially closer to Plaintiffs' residences than is this courthouse."); *Farrior v. George Weston Bakeries Distribution, Inc.*, 2009 WL 113774 (E.D.N.Y. Jan. 15, 2009) (granting defendant's motion to transfer case from NY to PA, court noted, "plaintiffs, who reside in Alabama, will be required to travel regardless of the transfer. In other words, this district is not convenient for the plaintiffs, and a transfer will impose no additional burden on them."); *Frame v. Whole Foods Market, Inc.*, 2007 WL 2815613, *6 (E.D.N.Y. Sept. 24, 2007) ("As for Plaintiff, she would be only slightly more inconvenienced, if at all, by a transfer of the case [from New York] to Texas since she will have to travel outside of North Carolina regardless."). As for O'Leary, it is a Michigan corporation with its principal place of business in Michigan, so it cannot be said that Michigan is generally an inconvenient forum for it. But O'Leary clearly finds Southern Indiana to be a more convenient forum for this particular litigation, as evinced by its decision to bring the breach-of-contract action there – a reasonable and more-efficient decision in light of the other factors discussed below.

    **The second *Steelcase* private-interest factor, the convenience of witnesses, is the most**

**important factor in a discretionary transfer-of-venue analysis.** *See Steelcase*, 336 F. Supp.2d at 720-21. **It overlaps with the sixth *Steelcase* private-interest factor, practical issues bearing on where the case can be more expeditiously and inexpensively.** Preliminarily, this is not a case where the likely witnesses are scattered over many different jurisdictions so as to render any district, including the transferee district, not particularly convenient. *Contrast Avery Dennison Corp. v. Alien Technology Corp.*, 632 F. Supp.2d 700, 718 (N.D. Ohio 2008) (Kathleen O'Malley, J.) (balance of factors did not favor transfer of action from Northern Ohio to North Dakota, because, among other things, "the potential witnesses are spread across the country and the world. The inventors are in California, South Carolina, Great Britain and, possibly, Pennsylvania. Both parties' corporate representatives are in California, while [plaintiff]'s RFID marketing and development personnel, and most of its legal team, are located in the Northern District of Ohio.")

Absent contrary evidence, the court presumes that fact witnesses likely to have the most pertinent knowledge about the historic operations at the Indianapolis site, the release of allegedly hazardous substances at the site, and environmental practices of current and past operators of the site, will be current and former employees who worked at the site and will most probably be in Indiana. Presumably, the Cincy-employee witnesses relating to the negotiation or underwriting of the policies, and the Cincy adjuster handling O'Leary's claims in this matter, are all located at its headquarters in Fairfield, Butler County, southern Ohio, and live somewhat near to that headquarters. Fairfield in Butler County, Ohio is clearly closer to Indianapolis than Kalamazoo, Michigan.

For its part, Cincy states that it "will likely *depose*" O'Leary's CEO and "anticipates *deposing* other management personnel at O'Leary who are responsible for company operations and

procuring insurance policies for O'Leary," P's Opp at 19 (emphasis added). As the employer, however, O'Leary has the power and ability to compel its executives and other employees to give deposition or trial testimony in the locations necessary, and to defray the cost of them doing so, and the convenience of such party witnesses is again not a factor weighing in favor of retaining the case in Michigan.

As for *non-party* witnesses, whose convenience is more important than the convenience of *party* witnesses on either side, *see Egrsco, LLC v. Evans Garment Restoration, LLC*, 2009 WL 3259423, *6 (S.D. Ohio Oct. 8, 2009) (Marbley, J.) ("the convenience of non-party witnesses, as opposed to employee witnesses, is what is important") (citing *Smith v. Kyphon, Inc.* 578 F. Supp.2d 954, 963 (M.D. Tenn. 2008) (citing *Steelcase*, 336 F. Supp.2d at 720-21 (Quist, J.))), they may include former employees of Ohio-based Cincy, former employees of Michigan-based O'Leary, and former or current employees of the prior owners/operators of the Indianapolis site. All of those potential non-party witnesses can by now be located anywhere.

In any event, as O'Leary notes, Cincy identifies merely a *single* non-party witness – O'Leary's Michigan-based insurance broker – which there is a "*possibility*" that it may call. *See* P Cincy's Opp at 15. The mere possibility of a single non-party Michigan witness does not come close to outweighing the numerous potential Indiana- and southern Ohio-based non-party witnesses who may be called by either or both sides. *Cf. Farrior v. George Weston Bakeries Distribution, Inc.*, 2009 WL 113774 (E.D.N.Y. Jan. 15, 2009) ("convenience of the witnesses" factor strongly favored transfer, because a substantial number of witnesses resided in transferee district and court was not aware of a single potential party or non-party witness who resided in the plaintiff's chosen district).

The convenience of the party witnesses, then, is roughly neutral or of little bearing on the

analysis, while the convenience of the *non-party* witnesses favors the Southern District of Indiana.

**The third *Steelcase* private-interest factor, relative ease of access to sources of proof, has little bearing on the transfer-of-venue analysis.** As for the location of relevant documentary evidence, "the Court does not view this factor as particularly significant given the technological age in which we live, with the widespread use of . . . electronic document production." *Farrior v. George Weston Bakeries Distribution, Inc.*, 2009 WL 113774, *6 (E.D.N.Y. Jan. 15, 2009) (citing *American S.S. Owners Mut. Protection & Indem. Ass'n, Inc. v. Lafarge North America, Inc.*, 474 F. Supp.2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.") and *DiStefano v. Carozzi North America, Inc.*, 2002 WL 31640476, *4 (E.D.N.Y. Nov. 16, 2002) ("Although the location of relevant documents is [theoretically] entitled to some weight when determining whether a case should be transferred , modern photocopying technology deprives this issue of practical or legal weight."))

**To the extent that this factor is not obsolete as a matter of law, it is inconclusive or weighs slightly in favor of transfer to Indiana.** O'Leary is a Michigan corporation with its principal place of business in Michigan, so it might be expected to keep records regarding even an Indiana facility at its Michigan headquarters. On the other hand, the only O'Leary facility at issue in this insurance-coverage dispute is located in Indiana, so it can reasonably be expected – absent contrary evidence – that at least some substantial portion of the records pertaining to that facility will be located at the facility itself. To the extent that the records of prior owners/operators of the Indiana site will be relevant, the record thus far says little about who those entities or persons were and where they might keep their records regarding the site.

**As for the fourth private-interest *Steelcase* factor, the availability of process to compel**

**the attendance of unwilling witnesses, it tends to favor transfer to Southern Indiana.** Cincy's arguments on this factor are largely unavailing. Cincy states that it "will voluntarily produce its own pertinent witnesses for deposition at a trial [sic] in this forum without the need for a subpoena", P's Opp at 19, but it does not state whether it would voluntarily produce its own employee-witnesses for deposition or trial testimony in Southern Indiana. Cincy ignores the fact that its employee-witnesses who work at its southern Ohio offices and presumably live near those offices would *definitely* be more than 100 miles outside any location within the borders of this district – the limit of this court's subpoena power under Fed. R. Civ. P. 45(b)(2)[4] – but would almost certainly be within 100 miles of the borders of the Southern District of Indiana and thus within the reach of that court's subpoena power under the same rule. *See Sullivan v. Tribley*, 602 F. Supp.2d 795, 799 (E.D. Mich. 2009) (Lawson, J.) (transfer from Eastern to Western District of Michigan was appropriate

---

[4]

Federal Rule of Civil Procedure 45(b)(2) provides as follows:

> Subject to Rule 45(c)(3)(A)(ii), *a subpoena may be served at any place*:
>
> (A)     within the district of the issuing court;
>
> (B)     *outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection*; * * *

Emphasis added. In turn, Federal Rule of Civil Procedure 45(c)(3), Quashing or Modifying a Subpoena, provides that

> (A)     On timely motion, *the issuing court must modify or quash a subpoena that*: * * * (ii) *requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person* – except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held; . . . .

Emphasis added.

where, *inter alia*, "[t]he court's subpoena power could be exercised more readily in the [Western] district") (citing FED. R. CIV. P. 45(b)(2), which limits service of subpoena on out-of-district witness to a 100-mile radius from the courthouse). The court thus rejects as conclusory and unlikely Cincy's assertion that "[i]t is also clear that more witnesses would be subject to the subpoena power of this Court than the court in the Southern District of Indiana." P's Opp at 19.

**As for the relative means of the parties,** neither party presents reason to believe that either of them lacks the means to litigate in this forum or in the Southern District of Indiana, *see* P's Opp at 19-20, so this factor has no bearing on the transfer analysis.

**Finally under the private-interest rubric**, as to the "locus of operative facts", the operative facts regarding the negotiation of the insurance policies are centered in the locations where the parties negotiated the policies, which are presumably Michigan (for O'Leary headquarter officials or their insurance broker), and Southern Ohio (for Cincy officials), and possibly Indiana itself (for O'Leary officials based or present at the Indianapolis facility whose alleged pollution triggered the Indiana DEM letter and in turn, this controversy). The operative facts regarding the only facility for which coverage is sought, the Indianapolis facility, are presumably centered in Indianapolis where the facility is located. Cincy stresses that eight of the nine sites insured under these policies are located in Michigan, but this is a disingenuous argument and a red herring; the only insured site at issue in these two cases in any way is the Indianapolis site, which is in the Southern District of Indiana. The locus of the operative facts factor, then, favors transfer to the Southern District of Indiana.

Public-Interest Factors Likewise Are Neutral or Weigh in Favor of Transfer

**The "public interest" factors typically considered by Sixth Circuit district courts in their section 1404(a) analysis include the following:**

> (I) the enforceability of the judgment; (ii) practical considerations affecting trial management; (iii) docket congestion; (iv) the local interest in having deciding local controversies at home; (v) the public policies of the fora; (vi) the familiarity of the trial judge with the particular state law.

*Steelcase*, 336 F. Supp.2d at 720 (Quist, J.) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)).

**This first *Steelcase* public-interest factor, enforceability of a judgment, is not implicated.** Neither party has suggested that they are not amenable to the jurisdiction of either district court, or that a judgment against Cincy otherwise will be any more difficult to enforce in this district or the Southern District of Indiana. The court perceives no way to distinguish between the two districts on this basis.

**As for the second and third *Steelcase* public-interest factors, trial management and docket congestion,** our Circuit has stated that "[a] prompt trial . . . is not without relevant to the convenience of parties and witnesses and the interest of justice." *Fannin v. Jones*, 229 F.2d 368, 369 (6th Cir. 1956) (citation to S.D.N.Y. omitted); *see, e.g., Leyvas v. Bezy*, 2008 WL 2026276, *5 (**D. Ariz.** May 9, 2008) (comparing median time from filing to trial in plaintiff's chosen district versus proposed transferee district). Cincy presents general statistics published in the U.S. District Court - Judicial Caseload Profiles to suggest that a suit in this court is likely to conclude sooner than O'Leary's contract action in the Southern District of Indiana:

> The median time that it takes a case to go from filing to disposition in the Western District of Michigan is about 8.4 months, compared to 9.2 months for cases filed in the Southern District of Indiana. In addition to getting cases to disposition quicker, the Western District of Michigan has fewer overall filings than the Southern District of Indiana; in 2008 the Western District of Michigan had 2,059 filings, and the

Southern District of Indiana had 2,942 filings.  * * *

In light of the fact that it takes less time on average for a case in the Western District of Michigan to move from filing to disposition, coupled with the fact that there are fewer overall filings in the Western District of Michigan, it is likely that Cincinnati and O'Leary's first-filed action pending in this Court will be disposed of faster than O'Leary's identical, second-filed case in the Southern District of Indiana.

Cincy's Opp at 23 (citing Ex J).  Cincy's argument on this score suffers from at least three logical defects.  First, Cincy does not specify the number of full-time district judges, senior district judges (who carry a reduced caseload compared to an active district judge), and magistrate judges in each of the two districts.  Therefore, the relative number of filings alone tells us nothing about the projected speed with which the two districts will likely dispose of a "filing."  Second, Cincy itself acknowledges that "[t]he median time that it takes a case to go from filing to trial in the Western District of Michigan is [the] same as in the Southern District of Indiana – about 29 months." Cincy's Opp at 23 (presumably referring to Ex J).  Third, general statistics and inferential predictions must yield to the specific dates actually set in this matter.  This court's Case Management Order calls for trial to commence on December 5, 2011 (*see* Doc. No. 17 at 1), while the general Judicial Caseload Profile statistics predict that the presumptive trial date for the Indiana action is 18 months after the filing date of October 9, 2009 (*see* O'Leary Reply Ex 5 at 6), i.e., about April 9, 2011, nearly eight months sooner than the trial date scheduled here.  Thus, the second and third *Steelcase* public-interest factors favor transfer.[5]

---

[5]

Even if trial in this court seemed likely to occur as soon as trial in Indiana, the balance of factors would still favor transfer.  Indeed, when the other factors favor transfer, courts have sometimes ordered transfer even when that would cause a *later* trial.  *See, e.g., Breckenridge Pharmaceutical, Inc. v. K.V. Pharmaceutical Co.*, 2009 WL 1404698, *5 (S.D. Fla. May 19, 2009) (order transfer or alleged infringer's declaratory-judgment action to district where patentholder's infringement action was pending; notwithstanding alleged infringer's complaint that transfer would make it impossible to maintain the current aggressive pretrial schedule, a delayed result was more

**The fourth** *Steelcase* **public-interest factor,** the local interest in having local controversies at home, is probably neutral with respect to the questions of Cincy's contractual duties to defend and indemnify O'Leary.  The underlying cause of the Indiana DEM letter and related investigative and remediation activities was apparent discharges in Indiana which allegedly may have violated Indiana state law.  But it is not clear what particular interest the residents (potential federal jurors) of Indiana may have – more than the interest of the residents (potential federal jurors) of Michigan – in whether this insurance company is contractually obligated to provide or pay for an alleged polluter's defense, or to indemnify that alleged polluter with regard to Indiana state regulatory matters.

**On the fifth** *Steelcase* **public-interest factor, the public policies of the fora,** the parties present no reason to believe that it has any bearing on the transfer analysis.  *See Egrsco, LLC v. Evans Garment Restoration, LLC*, 2009 WL 3259423, *6 (S.D. Ohio Oct. 8, 2009) (Marbley, J.) ("The fifth public factor, the public policies of the two fora, is also neutral, because neither party cites a compelling public policy that one court or the other is more capable of supporting.").

**The court comes to the sixth and last** *Steelcase* **public-interest factor, the trial judges' relative familiarity with the governing substantive law.**  Because this action comes to federal court only by way of diversity jurisdiction, the question is, which State's substantive law seems most likely to govern the duty-to-defend and duty-to-indemnify issues.  The court is wary of attaching weight to this factor, because the choice-of-law issue has not been fully briefed, let alone decided, by either court.  *See* Cincy's Opp at 20-22.  Moreover, in the absence of any legal issues which seem complex, the necessity for either court to apply another State's law would not be a weighty factor

---

efficient than having two federal courts conduct substantially similar patent cases and risk duplication as well as conflicting claim construction, validity and infringement rulings).

anyway. *See Brown Co. of Waverly, LLC v. Superior Roll Forming, Inc.*, 2009 WL 4251093, *5 (W.D. Mich. Nov. 25, 2009) (Quist, J.) ("Even assuming that Ohio law applies, however, this factor weighs only slightly in favor of transfer as no complex legal issues are involved.") (citing *ESPN, Inc. v. Quicksilver, Inc.*, 581 F. Supp.2d 542, 550-51 (S.D.N.Y. 2008) ("A forum's familiarity with the governing law, however, is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved.")

**In addition to the roster of customary § 1404(a) desiderata, the court notes two final issues to ensure that O'Leary's desired transfer truly serves both efficiency and "the interest of justice." First,** transfer will permit consolidation of this action with the pending breach of contract matter at the discretion of the District Judge. Cincy has not identified any issues in this case which are not already present in the Indiana action. *Contrast Smith v. Kyphon, Inc.*, 578 F. Supp.2d 962, 965 (M.D. Tenn. 2008) ("The Court finds that the pending class action alleging sex discrimination and retaliation is not sufficiently similar to the case at bar to weigh in favor of transfer. * * * Although Smith's complaint and the class-action complaint in California raise similar allegations of gender and pregnancy discrimination, Smith's claims are focused less on systemic gender discrimination within Kyphon as an entity and more on the specific actions of her supervisor and others with whom she worked directly."). Nor is there any suggestion that this is the rare case where consolidation of this action with the existing action in Indiana will itself cause confusion or waste resources. *Contrast Powervip, Inc. v. Static Control Components, Inc.*, 2009 WL 152106, *9 (W.D. Mich. Jan. 21, 2009) (Quist, J.) (denying motion to transfer computer manufacturer's declaratory-judgment action to district where related patent-infringement action was pending, partly because there was "no indication that the MDNC would consolidate this and the MDNC action,

especially when the MDNC action involves a myriad of collateral issues specific to Future", plaintiff's customer and itself a defendant in the infringement action, and "[t]hus, consolidation could possibly create inefficiencies relating to discovery disputes and confusion of issues").

**Second, this transfer will not confer any advantage on the movant, O'Leary (or impose any disadvantage on Cincy) in terms of the substantive law to be applied to this dispute.** Because this case was originally filed in a Michigan federal court, the transferee court in Indiana will apply *Michigan's* choice-of-law rules when determining which State's substantive law governs this purely state-law controversy. *See Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 611 (6th Cir. 2001) (Ann Aldrich, Sr. D.J.) ("Because the case was transferred from the Eastern District of Michigan to the Southern District of Ohio, we apply the choice of law rules of Michigan, the forum of the transferring court.") (citing *Northland Ins. Co. v. Guardsman Prods., Inc.*, 141 F.3d 612, 616 (6th Cir. 1998)); *EEOC v. Northwest Airlines, Inc.*, 188 F.3d 695, 700 (6th Cir. 1999) ("[D]istrict courts must apply the law of the state of the transferor district in diversity actions transferred under 28 U.S.C. § 1404(a) (convenience transfers) . . . .") (citing *Martin v. Stokes*, 623 F.2d 469, 471 (6th Cir. 1980)). *See, e.g., Davidson & Jones Dev. Co. v. Elmore Dev. Co., Inc.*, 921 F.2d 1343 (6th Cir. 1991) ("The [Tennessee] district court correctly applied North Carolina's choice-of-law rules to the breach of contract claim because North Carolina is the state from which the case was transferred.") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n.8 (1981)).

Under the circumstances, O'Leary's motion for transfer is well-taken under the Supreme Court's declaration that "permit[ting] a situation in which two cases involving precisely the same issues are simultaneously pending in different district courts leads to the wastefulness of time, energy, and money that 1404(a) was designed to prevent." *Continental Grain Co. v. Barge FBL-*

*585*, 364 U.S. 19, 26 (1960).

## ORDER

Defendant's motion for transfer of venue, or in the alternative to dismiss or stay the action [doc. # 13] is **GRANTED in part and DENIED without prejudice as moot in part.**

Pursuant to 28 U.S.C. § 1404, this case is **TRANSFERRED** to the United States District Court for the Southern District of Indiana.

Defendant's motion to dismiss or to stay the case is **DENIED without prejudice as moot**.[6]

"An order granting or denying a transfer under 28 U.S.C. § 1404(a) is interlocutory and not immediately appealable." *Hadix v. Johnson*, 228 F.3d 662, 669 (6th Cir. 2000) (citing, *inter alia*, *Lemon v. Druffel*, 253 F.2d 680, 683 (6th Cir. 1958) and *Bufalino v. Kennedy*, 273 F.2d 71, 71 (6th Cir. 1959)). [7]

**IT IS SO ORDERED this  16th  day of December 2009.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney

---

[6]

*See Tieman v. Victaulic Co.*, 2007 WL 397054, *1 (S.D. Ohio Jan. 31, 2007) ("For the reasons set forth herein, the Court, *without commenting on Defendant's motion to dismiss* . . . , **GRANTS** Defendant's motion to transfer venue . . . pursuant to 28 U.S.C. § 1404(a).").

[7]

*Accord Hill v. Potter*, 352 F.3d 1142, 1144 (7th Cir. 2003) (Posner, J.) ("Transfer orders, including ones transferring a case for the convenience of the parties and witnesses, 28 U.S.C. § 1404(a), are not appealable final decisions.") (citations omitted).

Moreover, "an appeal based on [allegedly] improper transfer of venue cannot be entertained by the transferee court or its court of appeals." *Flynn v. Greg Anthony Const. Co., Inc.*, 95 F. App'x 726, 730 (6th Cir. 2003) (citing *EEOC v. Northwest Airlines, Inc.*, 188 F.3d 695, 700 (6th Cir. 1999) and 15 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE § 3846 at 359 (2d ed. 1986)).

Chief United States District Judge